HUFF *v.* CUNNINGHAM.

Opinion delivered October 10, 1927.

HIGHWAYS—ROAD IMPROVEMENT DISTRICTS.—Since Acts Sp. Sess. 1923, p. 42, § 26, relating to road improvement districts, was expressly repealed by Acts 1927, p. 18, § 2, *held* that proceedings by certain improvement districts, created under such repealed law, looking toward completion of improvement for which they were created, were void.

Appeal from Pulaski Chancery Court; *Frank H. Dodge*, Chancellor; reversed.

*Charles Jacobson*, for appellant.

*J. W. House* and *John D. Shackleford*, for appellee.

WOOD, J. Separate actions were brought in the Pulaski Chancery Court by the appellants against the appellees. One of the appellants alleged that he was a taxpayer and owner of property in Improvement District No. 11 of Pulaski County, and the other appellant alleged that he was a taxpayer and owner of property in Improvement District No. 12 of Pulaski County, Arkansas. The complaints are similar. It is alleged that each of the districts was created according to law on January 12, 1926; the allegations set forth the procedure in the respective districts, showing that they were so created. After the above allegations, each of the complaints contains the following:

"Plaintiff further says that on the 23d day of May, 1927, the county court made an order appointing Hugh R. Carter as engineer for the district, a copy of which order is hereto attached, marked Exhibit E, and made a part hereof. Plaintiff further says that on said 23d day of May, 1927, the said Hugh R. Carter filed plans, specifications and estimates of the cost of construction to be made in said district, same being a county road and not a part of the State Highway system, which plans were approved by the State Highway Engineer, and same filed in the office of the State Treasurer, as required by law, a copy of which estimate is hereto attached, marked Exhibit F and made a part hereof. And that the said Hugh R. Carter on said date attached to said estimate his affidavit, that said estimate was a true and correct estimate of the cost of improvements for said district, a copy of which affidavit is hereto attached, marked Exhibit G, and made a part hereof.

"And also on the 23d day of May, 1927, the commissioners for said district attached to said estimate their affidavit, setting forth that the estimate of the cost of said improvement was true and correct, a copy of which affidavit is hereto attached, marked Exhibit H, and made a part hereof. Plaintiff says that, upon the filing of said estimate, together with the plans and specifications for said improvement, together with the affidavits of said engineer and the commissioners of said district, as above set out, the court made an order approving said plans, specifications and estimate, and pledging the county to the payment of fifty per cent. of the cost thereof, and appointing assessors for said district to assess the benefits to the land in said district arising from said improvements, a copy of which order is hereto attached, marked Exhibit "I," and made a part hereof.

"Plaintiff further says that the assessors heretofore appointed by the court to assess the benefits to the land in this district, on account of said improvement, filed their report with the county court on the 15th day of June, 1927. That a day was fixed by the court for a hearing

on said assessments, and that the county clerk published notice of said hearing, pursuant to the order of the county court, fixing the 29th day of June, 1927, as the day for said hearing, a copy of which order is hereto attached, marked Exhibit J, and made a part hereof.

"Plaintiff further says that, if said order is made approving the assessment of benefits to the land. in the district, the commissioners will then proceed to adopt a resolution authorizing the issuance of bonds and will proceed to issue said bonds and advertise same for sale; that the bond issue will be for the amount of $72,500 in District No. 11 and for $52,000 in District No. 12, and that they will pledge the revenue derived from the districts in payment thereof. That said commissioners have incurred considerable expense, which the taxpayers in said districts will be called upon to pay if not prevented by an order from this court.

"Plaintiff says that the formation of said district is unlawful and void:  (1).  Because the formation of said district is not authorized by law.  (2).  Because the county court has no authority to pledge fifty per cent. of the cost of construction of said road to be paid by the county for said improvement.  (3).  Because the Legislature of the State of Arkansas, on the 4th day of February, 1927, passed Act No. 11 of said session, by which all laws authorizing the formation of districts for road improvements are repealed.  (4).  Because, by said act No. 11 aforesaid, the State of Arkansas has taken over all road improvements, thus nullifying the right to form districts, or make improvements in those already formed, or the county court to pledge a part of the cost of the construction.thereof.

"Wherefore, the premises considered, plaintiff prays the court for a temporary restraining order against the defendants to prevent them from further proceeding in this matter, and that, upon a hearing by the court, said restraining order be made perpetual, and for all other and proper relief."

To each of the above complaints exhibits were filed setting forth the steps that had been taken in the creation of the districts and all procedure had before the county court with reference thereto to the time of the filing of the complaints. The appellees filed demurrers to the complaints, alleging that they did not state facts sufficient to constitute a cause of action. By consent of parties, the causes were consolidated for a hearing and were heard upon the demurrers to the complaints. The court sustained the demurrers. The appellants stood upon their complaints, and the court entered a decree dismissing the complaints on the ground that they failed to state a cause of action. From that decree is this appeal.

Section 26 of act No. 5 of the Acts of the Special Session of the General Assembly of 1923, commonly known as the Harrelson Law, is as follows:

"It is declared to be the policy of the State that, in the future, road improvement districts which, at the time of the passage of this act, shall not have made any construction contract or issued any bonds, shall not undertake the improvement of public roads in their respective districts where more than 50 per cent. of the construction costs of the improvement, plus the interest on borrowed money or bonds, and the cost of extending and collecting taxes and such other administrative expenses as may be allowed by law, shall be collected from the lands in the district; and, to accomplish this result, no road improvement district hereafter formed and no road improvement district heretofore formed under general law or created by special act, in which no construction contract has been let at this time, or in which no construction work has actually been done, or in which no bonds have been sold, shall issue any bonds until a careful estimate of construction costs of the improvement has been prepared by the commissioners and engineers of the State Highway Commission or the district, and certified by the affidavit of a majority of the board of commissioners and the engineer, and

approved by the State Highway Engineer, and filed in the office of the State Treasurer. Such estimated cost shall contain an estimate of the actual construction cost. On the filing of such estimate the State Treasurer shall record it in one of the record books in his office. If there has been or may thereafter be allotted to such district State or Federal aid funds equal to fifty per cent. of such estimate, or if the county court in which such district is situated shall allot such district sufficient county funds, payable in the ensuing year, sufficient in themselves, or when added to allotted State or Federal aid, or cash contributions from other sources certainly available, sufficient, in the aggregate amount, to equal at least fifty per cent. of such estimated construction cost, the commissioners of the district may issue bonds in an amount not to exceed fifty per cent. of the estimated cost, as shown by the estimate filed with the State Treasurer; provided, however, that, if the said proposed improvement is not of a State Highway, and should it be ascertained afterwards that the work cannot be completed within such estimated cost, or, because of unforeseen contingencies, the completion of the improvement will cost exceeding such estimate, the commissioners of the district may issue additional bonds for such part, or all of the excess cost, as may be necessary, if a majority in number of the landowners in fee simple in the district, voting at an election to be called and held in the manner and after the procedure set forth in § 25 of this act, are in favor of the completion of the improvement. Any commissioner or engineer who shall willfully make or sign any false estimate of cost for filing with the State Treasurer shall be guilty of perjury, and shall be punished accordingly. It is made plain that this section and § 25 do not apply to districts that have done part of the work of improvement and the work is unfinished, or have outstanding construction contracts or bonds, but such districts may complete their work of improvement without being affected by this section or § 25 of this act.''

Section 2 of act No. 11 of the Acts of 1927, commonly known as the Martineau Law, is as follows:

"Sections 21, 22, 23, 24, 25, 26, 27, 28, 29 and 32 of act No. 5 of the Extraordinary Session of the Forty-fourth General Assembly of the State of Arkansas, approved October 10, 1923, with all amendments thereof, are hereby repealed."

Act No. 11 was passed February 4, 1927. The allegations of the complaints and the exhibits thereto show that on the 23d day of May, 1927, the county court of Pulaski County proceeded, under the supposed authority of § 26 of the Harrelson Law, to appoint an engineer for the districts and to receive his estimate and the estimate of the commissioners of the cost of the construction work contemplated by the districts, and to approve the same. The allegations of the complaints further show that, after approving the plans and specifications and estimates of the cost of the improvements made by the engineer and commissioners of the districts, the county court proceeded to order and adjudge that the county pledge and allot to the districts fifty per cent. of the estimated cost of the improvement, to be paid out of the county funds within a year, and to appoint assessors to assess the benefits. The allegations of the complaints further show that the assessors filed their report of the assessment of benefits and that the court fixed a day for the hearing of any objection by property owners to the assessments. The complaints further alleged that, if the court approved the estimate of benefits, the commissioners would proceed to issue bonds and cause the improvement to be made.

Counsel for the appellees conceded that these districts were established under the Harrelson Law. Such being the case, after the express repeal of § 26 of the Harrelson Law, *supra,* by § 2 of the Martineau Law, *supra,* the county court and the commissioners are without authority to proceed under § 26 of the Harrelson Law to make the improvement. Even though the districts be still a corporate entity and be not abolished by the repeal

of § 26 of the Harrelson Law, nevertheless they cannot invoke that section as authority for their procedure to make the improvement, for the reason that the repeal of that statute blotted it out of existence. The contention that, since the Legislature did not expressly abolish Districts Nos. 11 and 12, therefore they would have a right to proceed under the law that existed when the district was established, is wholly unsound. These districts cannot proceed to make any improvement not bottomed upon the authority of a statute in existence when the improvement is sought to be made. Therefore all the procedure of the county court looking to the completion of the improvement for which these districts were created under the supposed authority of § 26 of the Harrelson Law, *supra*, after that section had been repealed, is absolutely null and void.

Learned counsel for the appellees contend that, notwithstanding the repeal of § 26, *supra*, the commissioners of the districts still have the right to proceed to issue bonds to make these improvements to the extent of fifty per cent. of the cost of the construction thereof, invoking § 26 as authority for such contention. As we have already stated, this contention is without merit. It is unnecessary for us in this case to go further than to hold that, since the passage of the Martineau Law repealing § 26 of the Harrelson Law, *supra*, no improvements can be made under the authority of that section. The chancery court therefore should have overruled the demurrers to the appellants' complaints and granted them the permanent injunction prayed therein. (See note below).

For the error indicated the decrees are reversed, and the causes are remanded with directions to overrule the

(NOTE). What we have stated above has no reference whatever to road improvement districts that are proceeding to make their improvements under the special statutes creating them. These road improvement districts created by special statutes independent of the Martineau Road Law and that are not a part of the highway system under that law are expressly recognized and authorized to proceed to make their improvements under Act No. 238 of the Acts of 1927.

demurrers and to enter a decree awarding the appellants the relief prayed, and for such other and further proceedings as may be necessary according to law and not inconsistent with this opinion.